THE ÆTNA STANDARD IRON AND STEEL CO. v. SAMUEL M. TAYLOR, SEC. OF STATE.

*Hard Law not Unconstitutional.*

SHEARER, J.

Judgment affirmed for the reasons stated in the opinion of PUGH, Judge [1 O. L. D., 180], and the further reason that, in the opinion of this court, the Hard law requires the charge under it to be based upon the proportion of the authorized capital stock represented by property owned and used in Ohio  All the property of this company being within Ohio and *its* authorized capital stock being $5,000,000, the secretary of state was right in fixing the fee at $5,000.

---

## NOT–NAVIGABLE INLAND LAKE.

[Geauga Circuit Court—February Term, 1896.]

Laubie, Frazier and Burrows, JJ.

† THE BASS LAKE CO. v. HOLLENBECK ET AL.

1. DEDICATION UNDERLYING LANDS TO PUBLIC USE.

A non-navigable inland lake, with an inlet and outlet stream, is the private property of the owners of the lands underlying its waters, and is a subject of common law dedication to public use; but the acts and declarations of such owners, indicating the intent to dedicate the same to the public use, must be unmistakable in their purpose and decisive in their character to have that effect.

2. LEASE OF UNDERLYING LANDS, WITH RESERTATION OF FISHING RIGHTS.

An owner may lease his interest in such lake for a term of years, and reserve to himself the right of fishing therein during such term.  Such right of free fishery is a *profit a pendre* and ordinarily is inheritable and assignable; but will be neither, if inconsistent with the terms of such reservation and lease and the object of the demise.  If possession, such as is contemplated by the lease, is taken by such lessee, such lease, although not acknowledged, will be good as against subsequent purchasers who have actual knowledge thereof and of such possession.

3. RIGHT OF LESSEE TO DIVIDE HIS ESTATE AND SELL THE PARCELS.

If an owner leases for ninety-nine years his lands covered by the waters of such lake, together with a strip along its border two rods wide, and reserves to himself, his heirs and assigns the right to cultivate or use said strip for agricultural purposes, and to pass over the same to and from the lake at will from his remaining lands, and to fish with hook and line in the waters over the lands leased, the right of such lessor to divide such dominant estate, including said strip, into parcels, and such free fishery into distinct interests, and sell the same, and thus distribute such right of way and free fishery, is limited not only by the character of such lands and the uses to which they were devoted at the time of the making of such lease, but, more especially, by the purpose of such grant, as found in the terms thereof, when read in the light of surrounding circumstances referred to therein.

Appeal from the Court of Common Pleas of Geauga county.

†Dismissed by the Supreme Court for want of a printed record; 3 News, 447.

LAUBIE, J.

This is an action brought to enjoin the defendants, twenty or more in number, from entering upon the waters of Bass lake, (formerly called Munson's pond) to boat, fish or hunt, or to use the lake in any way for recreation and pleasure.

The plaintiff claims to be the owner of all the lands underlying the waters of the lake, and bordering thereon, either in fee or by leasehold.

The lake is in extent about a mile long, and in width varying from one-third to half a mile. It has an inlet stream at the extreme northern end, and an outlet stream near its southern end. There is a tongue of land, which is owned by the plaintiff, in fee, called the island, on the eastern end of the lake, and near its southern end. It is really a peninsula, and is called an island because in times of high water, this peninsula is cut off from the mainland.

The plaintiff alleges that the defendants are interfering with its rights in the lake; that the plaintiff has stocked the lake with fish; that it bought a hotel and a summer resort on this island, and built at a great expense additional houses and buildings for the accommodation of the members of the company, their families and friends, who are using the lake for boating, fishing and hunting purposes, and for recreation and pleasure; that the defendants, especially in the inlet, keep and maintain a number of boats and use the same for the purpose of entering upon the lake with their friends and others, to boat, fish and hunt thereon, and have been doing so continuously for a long time and that they take and destroy the plaintiff's fish, and threaten to continue to do so, and will unless restrained by the action of the court.

The defendants admit the ownership of a part of the land by the plaintiff; they admit that they are boating and fishing upon the lake, as charged, and that they intend to continue to do so, claiming they have that right; they deny that the plaintiff owns all the lands covered by the waters of the lake, and allege that they own but a small part of it.

They allege that this lake belongs to the public; that it was dedicated to the public by the owners of the lake, about the year 1840, and that the public have continuously, notoriously and adversely used and occupied it ever since, for the purposes of pleasure and recreation, fishing and hunting upon its waters, and on the adjoining shores; and therefore they claim the right to enter upon the lake, and to boat and fish over all parts thereof, and to use it for all purposes of recreation and pleasure.

They further allege that they are the owners in fee of a portion of the land covered by the waters of the lake, and bordering thereon, and have acquired and own fishery rights therein, and have therefore the right to enter upon its waters, for the purposes aforesaid; that these rights are superior to any that the plaintiff owns, and therefore they deny that the plaintiff is entitled to the relief asked.

This lake is a non-navigable inland lake, and is therefore the subject of private property, and what ever fishing or other rights may exist in the waters covering the land belongs to the owners of the lands. That a non-navigable inland lake is the subject of private ownership is settled in this state, in the case of *Lembeck* v. *Nye*, 47 Ohio St.; 336. The right or rights that may be acquired in the waters of such a lake by the owners of the soil and of the riparian proprietors, and when and how they may be acquired, are there treated and defined, and cover many of the legal points raised in this case.

In the disposition of the case, as a mattter of convenience, I take up first, the question of dedication.

So far as the law is concerned, there perhaps can be but little doubt that such a body of water is the subject of dedication to the public. At least we so treat it, that it is a subject of dedication at common law. A statutory dedication is not claimed.

In order to make such a dedication, the intention must be clear and satisfactory upon the part of the owner, to dedicate it to public purposes, and an acceptance thereof by the public, for such purposes, must be shown. As this is purely a question of fact, it is sufficient in a published opinion to say that we find that the claim of the defendants in this respect is not true, and that the lake never was dedicated by the owners for any public use.

Passing that, therefore, and coming to the other questions in the case; there was substantially no dispute between the parties as to the conveyances made to them respectively, the questions being as to their construction and effect. These questions relate to, and grow out of conveyances from F. B. Hazen and the Kelloggs, and as to those parties, they are the source of title of all of the parties to this case, and there is therefore no dispute as to the title in the Kelloggs and Hazen.

It seems, from the evidence, that in 1877, Downing & Smith established a summer resort on this inland lake, for boating, fishing, and hunting. They built a hotel on the island near the southeastern corner of the lake, as I have already described, and for that purpose they bought the island and contiguous lands, with rights of fishing, trapping, hunting and boating in parts of the lake adjacent, and they leased other lands in the lake and on the margin to secure all the rights of fishery in, and control of the lake. These lands, rights and interest were subsequently conveyed to the plaintiff, The Bass Lake Company, who is the successor in the rights and interests of Downing & Smith; and plaintiff obtained other leases of parts of the lake and its margin, and expended a large amount of money in additional buildings and improvements in and about the lake, and established a private club house for members of the company, their families and friends.

In the orally delivered opinion I recited at length all the conveyances, by deed and lease, with a description of the lands and rights acquired thereby by plaintiff and the defendants, which it is not necessary to here insert.

From this statement, as to titles of the parties, and the plaintiff's rights, it is apparent that the plaintiff has exclusive right as against the defendants, to all of the lake, and its borders, except such portions of the lake as are comprised within the Miller and Tracy tracts (as to which neither of the parties have any right), and except as such right is modified by the reservations in the Kellogg and F. B. Hazen leases.

As to said Hazen lease, it being for a longer period than three years, and not being acknowledged, it is not a perfect lease; but in law is a good contract for a lease, binding upon Hazen and all parties with notice.

The defendants admit they had knowledge of it when they acquired title from Hazen, and claim that they purchased from Hazen, for the express purpose of testing the plaintiff's rights. Therefore they had knowledge of this lease, or contract for a lease, and the possession by the plaintiff when they purchased from Hazen, and they are bound by it. They acquired no title as against that lease. Hazens' land included a small narrow strip covered by the waters of the lake. There is in this

Hazen lease an exception that needs to be considered in this case to ascertain whether or not the defendants obtained any rights in the waters of the lake from Hazen, by reason of this reservation, as against plaintiff.

It is a lease for the period of ten years, to said party of the second part, and by which Hazen covenants: "To give to said second party the exclusive control and use of so much of his land as touches Bass lake, together with all water, fishing, boating and trapping rights as belong thereto, and does hereby agree to keep all and every one off of said shore line and allow no boats or fishing thereon or therefrom. But said first party reserves the right to fish himself, and with one other person at such times and places as the rules of the organization which controls what is known as the Bass lake property on the south side of the lake, authorize the members of said organization to fish. And said party of the first part agrees not to trap or fish on said lake or allow any one entering from his land, or with him, to trap or fish in any way in said lake, except in the manner and time set-forth in said rules."

This lease therefore contains a reservation or an exception of free fishery, as it is termed and known in law, to Hazen, during the term of the lease.

A several fishery is that which belongs to the party who owns both the land and the water rights in non-navigable streams. A free fishery arises when one who thus owns in severalty, conveys an interest in the property, or in the right to fish, to another. Therefore this reservation on the part of Hazen reserved to him a right of free fishery, or fishery in common with the lessees, under the conditions named. A free fishery is a profit in the land, a right to take a part of its products, to wit : the fish, and therefore is termed a "*profit a prendre*," and as such it is inheritable and assignable as a fee, although the owner of the free fishery may own no part of the land itself. Washburn on Easements (star paging), 416; *Boatman* v. *Lasley*, 23 Ohio St., 614, 618. Whether however a particular free fishery is inheritable or assignable, may depend upon the nature and effect of the terms of its creation; if the instrument creating it shows a contrary intention, effect must be given to that intention just as we give effect to the intention of parties in any other instrument, or in regard to any other subject-matter. A contract in writing of this character must be determined by the same rules of law as any other contract, and the leading rule is to ascertain from it the intention of the parties, and thus arrive at its effect.

When we look to this reservation of free fishery in the lessor, Hazen, it is so worded and so restricted in its terms that we think there is in this instance no right of inheritance or assignability. That it is a mere personal right—a right in gross. It is expressly limited to himself, and one other. It is not like ordinary reservations, general in terms, but it is expressly limited to himself with one other—limiting the number of others, who, with himself shall participate in it ; and in addition thereto, he agrees to keep every other person off of the lake, or off of the strip bordering upon it, either to boat or to fish, during the term named. So it is impossible for us to conceive that this right of free fishery, thus retained by Hazen for himself and one other, limited to a period of ten years, contains within it inherently the right of transmission by assignment or by inheritance ; and therefore Hazen, when he conveyed to the defendants, could not convey to them, and did not convey to them, his right of free fishery in the waters covering that portion of the land, during the existence of the lease.

The Kellogg lease was for ninety-nine years, executed by Mr. and Mrs. Kellogg, and by which they leased to Downing & Smith a strip of land two rods wide, above low water mark, the full length of the farm, and all the land covered by the waters of the lake owned by Mrs. Kellogg. She owned all of the lake north of Miller's north line and east of the lot lines running north and south through the center of the lake, and the lands to the east and north, embracing the inlet to the lake.

This lease provided that the lessees were to hold the premises named for the period named, "upon the terms and conditions hereinafter mentioned." And thereafter it provided that, "the party of the second part to hold said lands for their protection in the improvements and use of said pond. It is further agreed by and between the parties to this lease, that the said parties of the first part, their heirs and assigns, shall have the right and privilege to cultivate or use said strip of land for agricultural purposes, and that they have the right to pass over to and from said pond at will, and to have the privilege to fish with hook and line in the waters over the land leased."

This lease contains three reservations:

First—The use of the strip of land for agricultural purposes.

Second—The use of the strip as a way to and from the pond.

Third—The right to fish with hook and line, in the waters over the land leased.

The defendants claim that each of these rights is incident to the fee which remained in Kellogg, and a part and parcel of the land itself, and therefore, although in the form of a reservation, is properly and strictly an exception in the grant, a part of the realty not conveyed. That having retained the fee, the Kelloggs could not properly have an easement in their own lands. That they leased the lands, but did not give exclusive possession or the exclusive use, and having thus retained these interests, might sell the whole or part, as they saw proper, to as many parties.

To call these exceptions instead of reservations is simply talking about names. A reservation and an exception are substantially the same thing. A reservation or an exception is a deduction of something from the thing that is granted, narrowing and limiting that which otherwise would pass under the general words of the grant.

The rights in question here are such as could not be exercised by the lessors, as owners of the fee, unless reserved.

The general terms of the grant otherwise would have excluded them from exercising such rights.

They could not exercise them therefore in right of ownership of the fee, but only in the right of being thus reserved.

The question is, not how were these rights technically created, whether by reservation or exception, but what are the nature and incidents of these rights?

The Kelloggs, by the general words of the lease, granted unlimited possession and use of the lands for ninety-nine years; but by subsequent words they narrowed such grant, by reserving certain rights to such possession and use.

One reservation is as to the use of the strip for agriculturar purposes, by which the lessors retained a qualified joint possession, but fol such purposes only in regard to which there is no question in this case save as it affects the second reservation. It also serves to show the peculiar character of the lease.

The second reservation is as to the right of passage over the strip conveyed, to and from the pond, from their contiguous lands. This has no connection whatever with the first reservation.

It created a right of passage—a way or privilege for the grantors, of which, if it were not for these reservations, they would otherwise be barred, to reach the pond from their contiguous lands, and as such it becomes not only appurtenant to such other lands during the continuance of the lease, but an incident to right of free fishery, reserved to them in the pond, and as such it would pass to their heirs or assigns.

It is immaterial what it is called, whether we call it a right of way, a privilege, a servitude, a right of passage, or an easement. The parties evidently intended it should be at least an appurtenance to the contiguous lands of the Kelloggs. Therefore the right would pass in a conveyance of those lands, because it is an appurtenance, and because it is expressly reserved not only to themselves, but to their heirs and assigns. The right is therefore appurtenant to every foot of the land, and becomes vested in the purchaser of every parcel into which the land may be divided, not inconsistent with the terms of the lease.

Is this right of way over the strip leased to the plaintiff, restricted to a definite single way to Kelloggs and their assignees, or may they pass and repass at will over any and all parts of such strips?

Ordinarily, private rights of way are thus restricted, but this is not, as is evident, we think, from the first reservation.

In these reservations, the rights are reserved to use and cultivate the strip for agricultural purposes, and to pass over to and from the pond at will. Substantially this leaves the right of possession in the lessors, or at the least a joint right of possession with the lessees, and being thus in possession, with the right to use and cultivate every part of the land, it follows that they have the right to go upon, and pass and repass over it in all directions at will, without in any way interfering with, or trespassing upon, the rights of property of the lessees. All that the lessees evidently intended to, or did, obtain by the lease of the strip, was the right to bar strangers from passing over the land to the lake, and from using its margin.

The defendants, therefore, as assignees of Kellogg, to a parcel of the Kellogg land, including a portion of the strip leased to Downing & Smith at the inlet, have the right to go upon and over such portion of such strip in all directions at pleasure, to reach the lake, unless otherwise restrained. They have no right to use it, however, as a way to other lands or parts of the lake. They cannot, for instance, use it to reach the lake with the intention of going to some place beyond that part, conveyed to them by Kellogg's immediate grantee, Russell.

A right of way appurtenant to one piece of land, cannot be used to pass to and from another piece of land, not embraced in the grant.

"The proposition is universally true, that if one acquires a right of way to one lot or parcel of land, he cannot use it to gain access to that parcel and thence over his own land to other lands belonging to him. So far as he should use it for access to, or accommodation to other parcels than the specific one to, or accommodation, to other parcels than the specific one to which it is so appurtenant, he would be a trespasser." W. on E., 60, (star paging.) *Stearns* v. *Mullen*, 4 Gray 151; *Mendall* v. *Delano*, 7 Metcalf, 176; Goddard on Easements, 324. It is different in regard to a way to and from a highway. Goddard on Easements, 328.

The third reservation in this lease is the right to fish, reserved to the lessors, their heirs and assigns, with hook and line over the waters covering the land leased; a right of free fishery, but in this instance general in its terms, as well as connected with the fee of the land, and therefore inheritable and assignable.

The extent of the right of subdivision and sale of the land in parcels, and of such free fishery, by the Kelloggs remain to be considered. Such right is not restricted in the contract; but is there anything in the law applicable to such a lease which restricts the right of the Kelloggs to create an indefinite number of assigns—to divide and parcel out the land into small strips, and the free fishery into small interests, so as to include an innumerable number of people? That is the important question as to this lease.

As I have said, contracts of this kind are to be construed and governed in the same way as all other written contracts. The whole and every part is to be considered in order to ascertain what the intention of the parties was. While there is a right reserved to the Kelloggs, their heirs and assigns, to pass over this strip to and from the pond at will, and to fish with hook and line in the waters covering the lands thus leased, the other parts of the lease put a limitation upon the right of assignment, clearly and evidently. One of its conditions is: "The party of the second part to hold said land for their protection in the improvements and use of said pond." What was referred to in this provision? Downing & Smith had just purchased the island, and had established or were about to establish a hotel thereon, for a summer resort, for boating, fishing and pleasure upon the lake. The principal value and chief attraction of such resort would be the lake and its privileges. They were endeavoring to obtain all the interests of the various owners in the lake, so as to have control of it, to keep it for the use of their guests, and to prevent rivalry. They obtained the deed less than a month before this, for the twenty acres. In the light of these facts this provision of the lease shows substantially what the plaintiff alleges to be true, that when Downing & Smith obtained this lease from the Kelloggs, they did it with the intention and the purpose of establishing this summer resort upon the lake, and that the Kelloggs knew it, and made this lease for ninety-nine years to Downing & Smith for the express purpose of enabling them to protect themselves in such improvements, and in the use and enjoyments of the lake, for the purposes aforesaid, in connection therewith. This has a direct bearing upon the question of how many parties may the Kelloggs assign to; how many interests may they create? They may create, if the right of assignment is unlimited, enough adverse interests to submerge the plaintiff and their rights in the lake, and defeat and destroy the very object and purpose of this grant.

"The heirs of an owner of real estate, which was bounded in part by a sea beach, divided the estate by deed, and assigned to some of them parcels of land, bounded by the beach, and to others different parcels. The deeds assigning the latter parcels granted the privilege of getting sea weed from the beach below the last granted by the deeds of the former parcels.

It was held that this was a grant of an incorporeal hereditament appurtenant to the land to which it was annexed, and not a right in gross; and that it could not be severed and sold separate from the land,

and that a sale of the right to a stranger, would either be void, or would extinguish the right." *Phillips* v. *Rhodes*, 7 Met., 322.

The defendant in that case claimed through Mary Ann Balche, a defendant of one of these heirs, as purchaser or lessee, and on page 324 it is said in the opinion: "She can lease her share of the privilege while she remains an owner in common of the particular estate. If it is said that the privilege may in this manner be subdivided, and the same evils follow as would or might follow from the sale of the privilege independent of the land to which it is appurtenant, yet it must be remembered that its subdivision can only be such as the piece of land to which it is attached is subject."

That is, as we understand it, the right of, subdivision and sale, with a regard to a transfer of the easement, is limited by the character of the estate; that it is farm land, the parcels into which it is subdivided must retain the same character and use, to be entitled to a participation in its easement.

In summing up the result of the authorities on the right of assignment, Goddard on Easements, 339, says: "The result of these authorities appears therefore, to be, that if a dominant tenement is divided between two or more persons, a right of way appurtenant thereto becomes appurtenant to each of the severed portions, if such distribution of the easement is not at variance with the actual or presumed grant, under which the right has been acquired." In Washburn on Easements, on pages 183 and 184, star paging, it is said among other things: "The above case has been referred to thus specially, partly to illustrate the application of the doctrine of Kirkham against Sharpe, and partly to suggest a limitation to the proposition elsewhere made, that where an easement becomes appurtenant to an estate, it remains appurtenant to every part of which it may be divided, which, though generally true, is often limited by the nature of the easement, and the condition of the estate to which it is attached."

This may be further illustrated by the case put by Denman, Chief Justie, in giving an opinion in *Allen* v. *Gomme*, Goddard on Easements, *ante*, of the grant of a small parcel of land, part of a large field devoted to the culture of crops, for the purpose of a yard to the house of the grantee. If a way were reserved across the same to the field, the grantor could not sell this field into house lots, and thereby turn this way into one for the accommodation of a town or village."

The grant as actually intended, the nature of the easement reserved, and the condition of the estate to which it is attached, are all to be taken into consideration in determining the extent of the right of distribution of the easement or right involved. What is the actual grant and its object?

If it is for the express purpose of keeping strangers away from such a lake, so that the owner of a summer resort may have the exclusive use thereof, limited only by the reservations to the owners of land upon the margin to fish with hook and line—if that is the object has the party who reserves to himself, his heirs and assigns, the right to fish with hook and line—if that is the object, has the party who reserves to himself, his heirs and assigns, the right to fish with hook and line, the right to substantially destroy the effect of his conveyance, to overrun the summer resort and destroy it, to render it either of no value, or of materially less value? This right of subdivision and assignment, under such circumstances, must not only be restricted to a purpose of the

same nature as the dominant estate; but it must be reasonable with reference to the rights that the lessees have acquired, and the purpose of the lease as known to, and understood by, the lessors. If the lessors have the right to divide this easement and free fishery into sixty parts, what is to prevent each owner of such parts into likewise dividing it into sixty interests? Is there to be no check to such distribution?

The Kelloggs conveyed all their land to Russell, subject to the lease held by plaintiff. Russell conveyed to Eldridge one undivided half interest in the land covered by the waters of the pond, and in twenty-six acres of the land adjoining, subject to the lease, including but 150 feet out of this long stretch of margin owned by the Kelloggs, and included in said lease. Thereupon Eldridge conveyed 12-30 of his own interest to Coe, and 1-30 thereof to each of seventeen other parties, defendants, for whom he in fact purchased, and with intent upon the part of all to defeat the purpose of those from whom they derive title, in the making of said lease.

If sixty are to have these privileges to every one hundred and fifty feet of this two-rod wide strip of lake border, it will turn it into a city with a proprietor to every two and one-half feet of frontage.

We think it was unreasonable in this instance, to subdivide these reserved rights into sixty parts.

These defendants are bound by the legal effect of this lease as herein declared. It is in their chain of title. We think that so far as such title attempts to convey any right to these defendants to cross said strip and go upon the waters of the pond to fish with hook and line, as the Kelloggs might do, it is void, as against the plaintiff, and that the injunction prayed for may be granted in the respects indicated. That is, it can be granted only in the various tracts for the length of time that the plaintiff's leases extend, for instance in the Orville Smith tract, and in the F. B. Hazen tract, for ten years from the period from which it accrued, and all of the defendants except F. B. Hazen may be restrained from entering the pond for boating, hunting, trapping, fishing or for pleasure.

They may exercise the right of crossing and recrossing this strip to reach the pond itself, but they must not enter upon the waters of the pond.

As riparian proprietors, it is possible they have the right to the use of the water for domestic purposes; and for that purpose, possibly, the right of going to the margin of the waters, and with that matter we do not wish to interfere; but they have no right to go to the lake for the purpose of fishing, or boating, or entering upon the waters of the lake for any purpose, and the injunction may be made accordingly, at the costs of the defendants.

*Norris & Taylor*, and *J. B. Bostwick*, for Plaintiff.

*Metcalf & King*, for Defendants.